SH

**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jonathan Villalobos Acuna, | No. CV 17-00816-PHX-DGC (ESW) |
| Plaintiff, | |
| v. | **ORDER** |
| Corizon Inc., et al., | |
| Defendants. | |

Plaintiff Jonathan Villalobos Acuna, who was previously confined in the Arizona State Prison Complex-Florence, brought this civil rights case pursuant to 42 U.S.C. § 1983. (Doc. 1.) Defendants move for summary judgment. (Doc. 27.) Although Plaintiff was informed of his right and obligation to respond to Defendants' Motion for Summary Judgment, Plaintiff failed to respond, and the time to do so has expired. The Court will grant Defendants' Motion for Summary Judgment and terminate the action.[1]

**I.  Background**

Plaintiff sued for violations of his Eighth Amendment right to medical care stemming from Defendants' alleged failure to treat his brain tumor. (Doc. 1.) On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated an Eighth Amendment medical care claim against Defendants Arizona Department of

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), regarding the requirements of a response. (Doc. 29.)

1  Corrections (ADC) Director Charles Ryan and Corizon Health[2] and ordered them to
2  answer. (Doc. 6.) The Court dismissed the remaining claims and Defendants. (*Id.*)

**II.    Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and

---

[2] Corizon Health is a private contractor responsible for all inmate healthcare services within ADC. *See* www.corizonhealth.com (last visited Mar. 22, 2018).

draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

### III. Relevant Facts[3]

#### A. Plaintiff's Complaint

Plaintiff alleges the following facts in his Complaint:

In June 2014, Plaintiff began experiencing pressure behind his eyes. (Doc. 1 at 5.)[4] He also experienced blinding headaches and seeing flashing lights when he closed his eyes. (*Id.* at 6.) Plaintiff was sent to the optometrist and told to buy Tylenol from the prison commissary. (*Id.* at 5.)

On July 1, 2016, Plaintiff had an MRI. (*Id.* at 6.) On July 25, 2016, Plaintiff underwent surgery to have a brain tumor removed and "8 plates and 16 screws were placed" in his forehead. (*Id.*) Plaintiff was placed on very high doses of Tylenol and Ibuprofen which caused him to have stomachaches and blood in his stool. (*Id.*) At some point, a radiologist diagnosed Plaintiff with a second brain tumor. (*Id.* at 5.)

Defendant Corizon is delaying treatment for the tumor and is not giving Plaintiff the correct medications. (*Id.*) Defendants Corizon and Ryan have a policy of denying and delaying treatment for inmates' serious medical needs. (*Id.* at 6−7.) Defendant Ryan awarded the contract for the provision of inmate healthcare to Defendant Corizon based on Defendant Corizon's policy of delaying and denying treatment to save money. (*Id.* at

---

[3] Because Plaintiff did not respond to the Motion for Summary Judgment or file a controverting statement of facts, these facts are drawn primarily from Defendants' Statement of Facts and accompanying exhibits. (Doc. 28.) The Court will consider Defendants' facts as undisputed unless it is clear from the record evidence, including the allegations in the verified Complaint—which the Court construes as an affidavit in opposition to the Motion for Summary Judgment—that there is a dispute. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (allegations in a pro se plaintiff's verified pleadings must be considered as evidence in opposition to summary judgment); *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995) (verified complaint may be used as an affidavit opposing summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence).

[4] The citation refers to the document and page number generated by the Court's Electronic Case Filing system.

7.) All decisions made by Defendant Corizon are final and not subject to appeal, and inmates who use the non-medical grievance policy to grieve medical issues are labeled as vexatious and lose good-time credits. (*Id*.) Staff members who handle grievances have been directed not to grant relief to inmates. (*Id*.) Defendant Ryan is aware that Defendant Corizon is refusing to provide treatment for inmates' serious medical needs. (*Id*.) Due to Defendants' policies, Plaintiff has been denied treatment for his tumor. (*Id*.)

### B. Plaintiff's Medical Treatment

In May and June 2016, Plaintiff was seen for complaints of headaches and was assessed with migraines. (Doc. 28 (Defs.'s Statement of Facts) ¶¶ 5-6.) A magnetic resonance angiography (MRA) brain scan was requested and approved. (*Id*. ¶ 6.) Plaintiff had an offsite MRA brain scan on June 30, 2016, which showed a "large suprasellar mass displacing the anterior cerebral arteries and effacing both frontal horns of the lateral ventricles." (*Id*. ¶ 7.) A magnetic resonance imaging (MRI) brain scan was recommended and approved. (*Id*.) Plaintiff had an MRI brain scan on July 1, 2016, which showed a "[v]ery large anterior cranial fossa extra-axial tumor . . . compatible with meningioma." (*Id*. ¶ 8.) A neurosurgery consult was requested and approved. (*Id*.)

On July 6, 2016, Plaintiff had an offsite neurosurgery consult with Dr. Little at Barrow Brain and Spine and was diagnosed with a "[m]assive olfactory groove meningioma[,]" which is a "rare tumor that forms deep in the cranial cavity between the brow and nose in the front part of the base of the skull[.]" (*Id*. ¶ 9.) The tumor was causing brain compression. (*Id*.) Dr. Little informed Plaintiff that there was no alternative to surgery and recommended a bifrontal craniotomy with bilateral orbital osteotomy for tumor resection and possible right ventriculostomy. (Doc. 28-2 at 38.) Dr. Little advised Plaintiff that the surgery might have to be completed in stages and that complete resection of the tumor was "unlikely because of the involvement of the anterior cerebral arteries." (*Id*.) Dr. Little also told Plaintiff that the goal of surgery would be to reduce the size of the tumor and that Plaintiff would not regain his sense of smell. (*Id*.) Dr. Little prescribed Dexamethasone for Plaintiff's headaches. (*Id*.)

1 | Plaintiff was approved for an offsite neurosurgical consult for a bifrontal craniotomy, but an offsite oncology consult was denied as premature because the tumor had to be removed before oncological treatment, such as radiation, could be performed. (*Id*. ¶ 10.) Plaintiff was eventually approved for an offsite post-neurosurgery radiation oncology consult. (*Id*. ¶ 12.)

On July 25, 2016, Plaintiff had a bifrontal craniotomy with bilateral osteotomy for tumor resection and repair of the skull base with periosteal flap. (*Id*. ¶ 14.) There were no complications, and after the tumor was removed, a biopsy was performed which confirmed a grade 1 meningothelial meningioma. (*Id*.) Plaintiff was discharged from Barrow Brain and Spine on August 2, 2016 and returned to the prison infirmary for constant monitoring. (*Id*. ¶ 15.) The prison provider noted that pneumocephalus (air within the cranial cavity) was present upon discharge and that Plaintiff experienced seizures during and after the surgery, all of which are common occurrences with brain surgeries due to the disruption of neurological connections and the brain being exposed to the air. (*Id*.) Plaintiff was prescribed an anticonvulsant to control the seizures, Tylenol and Ibuprofen for pain, and a stool softener to relieve constipation that may be caused by the use of narcotic medications. (*Id*.) He was also given a head wrap for the pneumocephalus, which would eventually be reabsorbed into the body over time. (*Id*.)

Plaintiff was seen by either a prison provider or at Arizona Radiation Oncology (AON) on an almost-daily basis between August 2016 and January 2017. (*Id*. ¶¶ 16−127.) During this time, Plaintiff's pneumocephalus improved (*id*. ¶ 18); his scalp and surgical wound healed (*id*.); his seizures, although persisting, were managed with medication (*id*. ¶ 21); he was monitored for nose bleeds, tremors, seizures, and changes in mentation (*id*. ¶ 25); and he underwent at least two MRIs and at least two CT scans (*id*. ¶¶ 50, 59, 137). Plaintiff was prescribed several medications, including Tylenol #3 (Codeine), Excedrin, Ibuprofen, Keppra (anti-seizure), Lactulose (laxative), Docusate (stool softener), Valproic Acid (anti-seizure), Tegretol (anti-convulsant)[5], Dilantin (anti-

---

[5] Plaintiff's Tegretol prescription was discontinued in September 2016 after

convulsant)[6], Tramadol (opioid pain medication), Lamotrigine (anti-seizure), Ativan (anti-seizure), Zonegran (anti-convulsant),[7] and anti-nausea medications. (*Id.* ¶¶ 24, 26, 28, 30, 31, 35, 85, 116, 140). Plaintiff also had 30 radiation treatment appointments to treat any residual tumor that was not surgically removed. (*Id.* ¶¶ 25, 58, 84−107, 110−113, 116−117.)

On February 6, 2017, Plaintiff was seen by Dr. Marsh at AON for a follow-up radiation oncology appointment, and Dr. Marsh noted that Plaintiff had "recovered well after completing [radiation] treatment. He still has some intermittent headaches and is having 1-2 seizures per day (improves)." (*Id.* ¶ 134.) Dr. Marsh concluded that Plaintiff "is recovered well from treatment" and would continue to be monitored. (*Id.*)

On February 25, 2017, Plaintiff underwent an offsite CT scan and MRI, which indicated that Plaintiff's radiation treatment had been successful and the residual tumor "was dying via necrosis." (*Id.* ¶ 137.) A second tumor was not identified, but there appeared to be either a pocket of fluid or an epidural abscess, and a PET scan was recommended. (*Id.*) Plaintiff had an offsite PET scan on March 27, 2017, which revealed shrinkage of Plaintiff's brain tissue, and a follow-up MRI was recommended. (*Id.* ¶ 154.) An offsite electroencephalogram conducted on April 5, 2017 revealed normal results. (*Id.* ¶ 155.) Plaintiff was released from ADC custody on May 19, 2017. (*Id.* ¶ 159.)

**IV. Medical Claim**

    **A. Legal Standard**

To state an Eighth Amendment § 1983 medical care claim, a plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could

---

Plaintiff refused to take it because it caused him to feel tired and experience bad nightmares. (Doc. 28 ¶ 40.)

[6] Plaintiff refused to take Dilantin as recommended because of the side effects. (*Id.* ¶¶ 46, 57.)

[7] Plaintiff refused to take his Zonegran because it caused his headaches to worsen and increased his anxiety, and it was eventually discontinued. (*Id.* ¶¶ 142−152.)

result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. California Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

To succeed with his claim against Defendants Corizon and Ryan, Plaintiff must show that the constitutional violation he suffered occurred as a result of an official policy

or custom. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978); *Tsao v. Desert Palace, Inc.*, 698 F .3d 1128 (9th Cir. 2012) (*Monell's* requirements apply to private entities sued under § 1983). A policy is "a deliberate choice to follow a course of action" made by the officials or entity "responsible for establishing final policy with respect to the subject matter in question." *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992). A policy can be one of action or inaction. *Long v. Cnty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006). A "custom" is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). A plaintiff must show that the challenged action is the "standard operating procedure" of the municipality. *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008) (internal quotation omitted). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). While one or two incidents are insufficient to establish a custom or practice, the Ninth Circuit has not established what number of similar incidents would be sufficient to constitute a custom or policy. *See Oyenik v. Corizon Health Inc.*, No. 15-16850, 2017 WL 2628901, at *2 (9th Cir. June 19, 2017) (a reasonable jury could conclude that at least a dozen instances of defendant Corizon denying or delaying consultations and radiation treatment for cancer patient over a year amounts to a custom or practice of deliberate indifference) (citing *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1478 (9th Cir. 1992)). But "[t]here is no case law indicating that a custom cannot be inferred from a pattern of behavior toward a single individual." *Id.*

**B. Deliberate Indifference Analysis**

There is no dispute that Plaintiff's condition constitutes a serious medical need, so the Court's analysis turns on whether Defendants promulgated a policy or custom that resulted in a violation of Plaintiff's Eighth Amendment right to medical care.

Plaintiff states that Defendant Corizon "has the policy . . . to delay/deny treatment for serious medical needs." (Doc. 1 ¶ 11.) Plaintiff asserts that "when Corizon submitted its bid, it stated that Corizon has a grievance policy and litigation practice that delays/denies care to save money" and that Defendant Ryan "ordered this sealed." (*Id.* ¶ 12.) Plaintiff states that Defendant Ryan "has had the long established policy to delay/deny treatment for serious medical needs. (Doc. 1 ¶ 10.) Plaintiff asserts that Defendant Ryan "gave the contract to Corizon because of Corizon's policies to delay/deny treatment for serious medical needs" and that Defendant Ryan "knows that Corizon refuses to provide [prisoners] with treatment for [their] serious medical needs." (*Id.* ¶¶ 13, 18.) Plaintiff also states that Defendant Ryan "changed [ADC] policy and now all decisions by Corizon are final" and prisoners "cannot appeal the denial [of administrative grievances] to [ADC]." (*Id.* ¶ 14.)

The existence of such a policy is wholly unsupported by the record. Defendants have met their burden of showing that Plaintiff received adequate and timely medical care. Plaintiff's brain tumor was treated through surgical intervention and radiation treatment. (*Id.* ¶¶ 14, 25, 58, 84−107, 110−113, 116−117.) Plaintiff received consistent follow-up treatment and monitoring including frequent appointments with prison providers and offsite oncology appointments, MRIs, CT scans, an EEG, and a PET scan. (Doc. 28 ¶¶ 16−127, 50, 59, 137, 154−55.) Although Plaintiff experienced frequent seizures after his operation, Plaintiff had already been warned by Dr. Little from Barrow Brain and Spine during his pre-operative education that seizures were an expected risk of the procedure. (*Id.* ¶ 13.) Once Plaintiff was returned to the prison, his seizures were monitored and Plaintiff was prescribed pain medications, anti-seizure medications, and anti-convulsant medications to manage his seizures and treat his headaches. (*Id.* ¶¶ 24, 26, 28, 30, 31, 35, 85, 116, 140). The undisputed facts show that Plaintiff received regular, prompt, and thorough post-surgical follow-up treatment and monitoring. There is no evidence that Plaintiff was denied treatment or that his treatment was delayed pursuant to a policy, practice, or custom promulgated by either Defendant Ryan or

Defendant Corizon. Further, Plaintiff's vague allegation regarding the ADC grievance process is insufficient to establish a constitutional violation.

On this record, the unrefuted evidence shows that Plaintiff received constitutionally adequate medical treatment and post-surgical follow-up. There is no evidence of a policy or custom that led to a violation of Plaintiff's constitutional rights.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. 27).

(2) Defendants' Motion for Summary Judgment (Doc. 27) is **granted**, and the action is terminated with prejudice. The Clerk of Court shall enter judgment accordingly.

Dated this 3rd day of July, 2018.

David G. Campbell
United States District Judge